SIGMUND W. FISCHER, JR., Guardian *vs.* FREDERICK T. ENNIS, SR. *et al.*

JUNE 11, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

BARROWS, J. Gladys B. Ennis, wife of Frederick T. Ennis, executed a will August 3, 1914, without her husband's knowledge. In it she provided for the payment of debts, gave all the residue of her property to her husband and made him executor. At the time they had no children. A son, Frederick T. Ennis, junior, was born on February 11, 1915, and the attending physician called it a "full time" child. Gladys died on January 1, 1919. General Laws, 1909, Chap. 254, Sec. 22, then in force, now General Laws, 1923,

Chap. 298, Sec. 22, provides: "When a testator omits to provide in his will for any of his children . . . they shall take the same share of his estate that they would have been entitled to if he had died intestate, unless it appears that the omission was intentional and not occasioned by accident or mistake."

Construction of Gladys' will is asked of this court on certification by the Superior Court under General Laws, 1923, Chapter 339, Section 35. The question is whether the omission to provide for Frederick T. Ennis, junior, was intentional and not occasioned by accident or mistake.

We shall hereafter refer to the father as senior and the child as junior. There is no evidence that testatrix made any statements about a child when she executed the will. None of those present knew of its possible existence. Testatrix herself did not expect it until April and whether the testatrix intentionally omitted to mention the child or did so by reason of accident or mistake depends upon the degree of credibility attaching to a very limited number of witnesses and inferences to be drawn from several hundred pages of conflicting testimony. The will was not made with advice or assistance of a lawyer. The burden of establishing intentional omission rests upon senior. *Inman* v. *Inman*, 45 R. I. 206; *Horton* v. *Horton*, 46 R. I. 492; *Mitchell* v. *Mitchell*, 48 R. I. 1.

Among the welter of insinuations and evidence we find established the marriage of Gladys and senior, April 12, 1911; a deed of senior's homestead estate to Gladys September 14, 1912; execution of will in question, August 3, 1914, when Gladys was possessed of several hundred dollars, of her own, not received from her husband, the will being in Gladys' writing, unseen and possibly unknown to her husband for ten years thereafter; birth of junior on February 11, 1915; death of Gladys January 1, 1919, before which time she had conveyed to her husband certain real estate by way of equivalent for the homestead which he had conveyed to her; ownership of the homestead at the time of her decease.

Senior was remarried in 1922 to respondent Florence and the will in question was said to have been found by the second wife under circumstances which at least may be described as odd. Insinuation is made of execution of another will, about 1918, of which no one has knowledge.

The will before us was filed and admitted to probate in 1929, four or five years after its alleged discovery. Shortly after the probate senior filed a petition to be appointed guardian of the person and estate of junior and, after a lengthy hearing in the probate court, his petition was denied. Subsequently junior was taken from senior's home under a court order at the instance of the Society for the Prevention of Cruelty to Children, a guardian was appointed and by him the present proceeding aims to establish the title of junior in the real estate of which his mother died seized, subject, of course, to senior's right of courtesy.

We have construed Chapter 298, Sec. 22, *supra*, in *Rhode Island Hospital Trust Co.* v. *Hail*, 47 R. I. 64, as applicable to after-born children, as was junior in this case. The vital question when no mention is made of a child is what was testator's intention when the will was made. This may be shown by statements of testatrix made at the time or subsequently. There is in the present record no evidence of any expressed intention concerning testatrix' unborn child at the time of the execution of the will. Her subsequent statements disclose an ardent devotion to her child and desire to have him receive all her property but are of small value on the issue of her intention, as to the child, in making the will.

The evidence upon which senior chiefly relies is the alleged statement of Gladys, when the will was executed, in which Gladys said that her husband was good to her; that she got her property from him and that she wanted him to have it if anything happened to her. There is also an alleged statement to another woman that Gladys said within a year before death that she had made a will giving everything to her husband; that she intended him to have it; that he

would have a son to educate and would need it. There is considerable reason to doubt this story. This testimony as to what she had done is entirely inconsistent with her constant and undoubted statements to numerous people at, before and subsequent to this time, that her boy was to get all she had when she died.

The remark about her husband attributed to Gladys when executing the will is probable but establishes no definite intention to omit junior. It represents a natural attitude under the circumstances but is far from showing that she had a child in mind and intentionally omitted to mention it. She had not at that time told her own sister, with whom she was intimate, of her condition and when making the will her husband was a very natural beneficiary. Such a will by no means carries a necessary inference that if she should have a child reference to it was intentionally omitted from the will. Indeed one hesitates to look with full confidence on the evidence of the intensely interested and biased witness to the will. A doubt arises as to the accuracy of her recollections or the reliability of Gladys' statements in view of witness' astounding story as to what Gladys told her about the birth of the child. The testimony of senior certainly was mistaken on several matters and on some we must believe it to have been untrue. Most of the witnesses were vigorous partisans of one side or the other.

Under all the circumstances, after carefully reading and weighing the testimony, we must find that senior has not borne the burden of proof imposed upon him. The statute operated to give junior title as if his mother had died intestate, and he acquired such title subject to the courtesy interest of senior. Respondent Florence, the present wife of senior, has no interest in said real estate.

A decree may be offered in this court on the 24th day of June, 1930, at 9 o'clock, a. m., Eastern Standard time, for entry in the Superior Court.

*Arthur J. Levy,* for complainant.
*Emile H. Ruch,* for respondent.